THE DURHAM FER. CO. v. HEMPHILL AND GLENN, ASSIGNEES. ALLISON & ADDISON v. SAME.

1. ASSIGNMENT—STATUTE OF FRAUDS—MORTGAGE.—The facts, that a member of a firm executes a mortgage on individual property to the firm, which is assigned by it to a bank, and by the bank kept off the record for two years, and that such member executes a second mortgage on individual property to said bank to secure firm debts within ninety days of assignment by firm, do not render the assignment void under the assignment acts or Statutes of Elizabeth.

2. IBID.—IBID.—IBID.—REV. STAT., 2147, CONSIDERED.—A mortgage executed by an individual member of a firm to a bank to secure firm indebtedness within ninety days before assignment of the firm for the benefit of creditors is not in violation of sec. 2147 of Rev. Stat. or Stat. of Elizabeth.

3. IBID.—MORTGAGE.—An assignment by a firm for the benefit of its creditors is not invalidated by the execution of a mortgage on individual property by an individual of the firm to a firm creditor, to secure firm debt, even though such mortgage may be set aside on the ground of collusion and fraud.

4. ACTION—ASSIGNMENT—MORTGAGE—REV. STAT., 2147, CONSIDERED.—The assignee may bring an action to set aside a mortgage executed by the assignors within ninety days of a general assignment for benefit of creditors, but such mortgage would not affect the assignment. Rev. Stat., 2147, *considered*.

5. ASSIGNMENT—HOMESTEAD.—The reservation of the homestead of

the partners in a firm assignment, conveying only partnership assets, does not affect such assignment.

6. THE ASSIGNEES of Guy & Sandifer found not to be derelict in their duty.

Before BENET, J., Chester, September, 1895.    Reversed.

Two actions, one by the Durham Fertilizer Company against J. J. Hemphill and J. Lyles Glenn, as assignees of the Bank of Chester, and Geo. W. Gage and A. M. Titman, as assignees of Guy & Sandifer, and the other by Allison & Addison against the same.

The following is so much of the Circuit decree as is necessary to understand the questions:

It seems that originally these two sets of plaintiffs brought their action together in one joint suit.    A demurrer for misjoinder was sustained, and then the plaintiffs severed, and the two causes came on for hearing.    The plaintiffs charge that the said transactions between the Bank of Chester and Gny & Sandifer must be upset on two grounds: 1. Because they were fraudulent and void, and intended to defraud and hinder and delay the other creditors of Guy & Sandifer. 2. Because the said transactions were intended to secure a preference to the Bank of Chester, in violation of sections 2014, 2015 of the General Statutes, and because the preference given was within ninety days prior to the assignment of Guy & Sandifer.    At the trial of the cause, after all the testimony was in, the counsel for the plaintiffs moved the Court for leave to amend the two complaints, so as to allege that the assignment of Guy & Sandifer was void, because of the reservation of the homestead of the individual property of both of the partners therein, and for other causes which appeared in the testimony.    It seems to me proper, and leave was granted, and the amendment appears in the order passed.    Consequent upon the amendment thus allowed, plaintiff's counsel submitted a third ground, whereon he urged that the deed of assignment should be vacated, namely, (3) because of the reservation in the deed of assign-

ment out of the partnership assets. It would encumber this decree unnecessarily to set forth in detail all the facts proved in the trial of these two causes. The oral testimony fills thirty pages of type-writing, and it is proper to note here that a painful accident to the official stenographer of the Sixth Judicial Circuit prevented his furnishing me with his notes of the evidence for several months. This accident to an officer, well known for his promptness and efficiency, accounts for the seeming delay in filing this decree, and also the decree in several other causes heard by me on the Sixth Circuit. A careful reading of the testimony five months after hearing it from the lips of the witnesses on the stand only confirms the impressions produced on my mind during the trial, namely, that the transactions by and between Guy & Sandifer and the Bank of Chester in the matter of the two mortgages, especially the $800 mortgage, were collusive and fraudulent; that they were intended to secure an unlawful preference to the Bank of Chester at the expense of the other creditors of Guy & Sandifer; and that the reservation of the homestead in the deed of assignment vitiated that deed. When it is remembered that the $800 mortgage was made and delivered on the 30th of December, 1893, when not only Guy & Sandifer were hopelessly insolvent, and just two days before they made their assignment, but that the Bank of Chester, the mortgagee, was notoriously embarrassed and resorting to every possible shift to conceal its bankrupt state, virtually living from hand to mouth, and even failing to remit collections made, its own assignment being then imminent, and actually made ten weeks after; it is difficult to escape the conclusion that in the transactions had between these parties, the insolvent debtors and their insolvent creditors, there was manifest collusion and fraud to the detriment of the other creditors of Guy & Sandifer. This view of the matter is strengthened by the further fact that the $3,000 mortgage, executed, as already stated, in February, 1892, and held as a pledge by the Bank of Chester, and unrecorded for almost

two years, was put on record on 2d January, 1894, the very
day of the Guy & Sandifer assignment, I feel bound to hold
that the transactions referred to disclose a scheme whereby
it was fraudulently intended to secure a preference in favor
of the Bank of Chester at a time when the embarrassed bank
was not in a condition legally to receive, and the insolvent
firm was not in a condition legally to give, a preference.
It may be well just here to distinguish between the facts in
these causes and the facts in the case of the *South Carolina
Loan Co.* v. *McPherson*, 26 S. C., 431, which case might
seem to be against the view that the recording of the mort-
gage on the day of the assignment was in violation of the
assignment act. The McPherson mortgage to Mrs. Kinloch
in that case was wholly without taint or cloud, as was found
by the Judge who tried the cause, and the Supreme Court
properly held, adopting the language of the United States
Supreme Court in *Clark* v. *Iselin*, 21 Wall, 374, that "there
must have been a guilty collusion to constitute a fraudu-
lent preference condemned by the statute."

In the McPherson case the "guilty collusion" was want-
ing. Here in the causes under consideration the testimony
sufficiently establishes the presence of the "guilty collu-
sion." It should not be forgotten that the bank had ac-
cepted the four notes of these plaintiffs for collection, falling
due 15th November and 1st December; that the assignors
had made some payments on said notes, but that while they
had collected nearly all that was due on the farmers' notes
and accounts for fertilizers, Guy & Sandifer had appro-
priated nearly all the money thus collected to their own
use, and this, too, when by the terms of the written con-
tracts the said notes and accounts of the farmers were the
property of these plaintiffs. All this clearly shows that
Guy & Sandifer and the Bank of Chester were not true to
their trust—the one in failing to collect, the others in fail-
ing to remit after collection. Having thus found that there
was fraud and collusion on the part of the assignors, Guy
& Sandifer, and the Bank of Chester, in the making of the

$800 mortgage and in the recording of the $3,000 mortgage, and in other acts connected therewith, it follows that the Guy & Sandifer deed of assignment must be held fraudulent and void, and that it must be set aside and vacated. The deed of assignment must be set aside and vacated on the plaintiff's second ground, namely, that the $800 mortgage was executed and delivered, and the $3,000 mortgage recorded within ninety days prior to the said assignment, in violation of the assignment act. The provisions of that act make it unlawful for a debtor, in making an assignment for the benefit of his creditors, to give any preference to one creditor over another, except as to debts due to the public. And any such attempted preference made within ninety days of an assignment vitiates and nullifies the deed of assignment. The facts already set forth in this decree sufficiently justify the setting aside of the Guy & Sandifer deed of assignment on this ground also. The reservation of the homestead in the deed of assignment is relied on by these plaintiffs as a third ground for setting it aside. The Guy & Sandifer deed had in it this reservation: "But the homestead of either party hereto in any individual assets he may possess is not intended to be hereby conveyed away." I am disposed to hold that this reservation, in the light of the facts and circumstances of these causes, renders the deed void. There is no doubt that a debtor, the member of a partnership, need not include in a partnership assignment his own individual property, because that is not primarily liable. But in the cases at bar, the Guy & Sandifer mortgage from S. W. Guy of all his property was partnership assets and had ceased to be individual property. A homestead cannot be carved out of the mortgaged property, nor can it be reserved in a deed of assignment. In the case of *Homestead Association* v. *Enslow*, 7 S. C., 1, our Supreme Court decided that a mortgage was a conveyance of the property, by which the debtor divested himself of his entire estate, therein saving the equity of redemption. This equity of redemption was all

that remained to S. W. Guy after his mortgage to Guy & Sandifer; and by his second mortgage of the same property to the bank, he deprived himself even of that. How much stronger is this in a conveyance to assignees in trust of the entire estate? I cannot see how Guy can have a homestead in the property at Lowrysville. Having attempted to reserve it in the deed of assignment, renders the deed void, in my opinion; and for this reason, also, I hold that it should be set aside and vacated.

It is, therefore, ordered, adjudged, and decreed, that the deed of assignment executed by Guy & Sandifer to G. W. Gage and A. M. Titman, on 2d January, 1894, be, and the same is hereby, declared to be null and void, and it is hereby set aside and vacated. It is further ordered, adjudged, and decreed, that the $3,000 mortgage of Samuel W. Guy to Guy & Sandifer, executed 9th February, 1892, and recorded 2d January, 1894, be delivered by the assignees of the Bank of Chester to the assignees of Guy & Sandifer as part of the assigned estate of Guy & Sandifer, to be delivered as such by the said assignees of Guy & Sandifer to the receiver hereinafter appointed. It is further ordered, adjudged, and decreed, that the assignment of the said $3,000 mortgage to the Bank of Chester by Samuel W. Guy was fraudulent and void under the Statute of Elizabeth, and also null and void as being in violation of sections 2014–2015 of the General Statutes of South Carolina. It is further ordered, adjudged, and decreed, that the second mortgage on the real estate of Samuel W. Guy for $872.27, executed by him to the Bank of Chester on 30th December, 1893, and recorded 2d January, 1894, be, and the same is hereby, declared to be null and void under the Statute of Elizabeth and under the assignment act; and it is ordered, that it be forthwith given up, to be cancelled by the clerk of the court of said county. It is further ordered, that a receiver of the estate of the assignors, Guy & Sandifer, be appointed within thirty days from the filing of this decree; and to that end I will allow the parties to these causes

fifteen days from the filing of this decree, wherein to agree upon the person to be appointed receiver, and to submit to me the proper order in the premises. Should they fail to agree at the end of the said fifteen days, I will then, by a subsequent order herein, appoint such receiver, and provide in the order of his appointment for the foreclosure of the aforesaid $3,000 mortgage, and for the sale of the mortgaged property, and for the distribution of the proceeds as follows: first, to the costs and expenses of these proceedings; second, to the payment of the judgments of these plaintiffs, including a reasonable fee to the plaintiff's counsel; third, to the other creditors of said insolvent firm.

The defendants, J. L. Glenn and J. J. Hemphill, assignees of the Bank of Chester, except to the decree of his Honor, Judge W. C. Benet, made in these cases, on the following grounds:

1. Because his Honor erred in holding that these actions, in so far as they sought to set aside the giving of the $800 mortgage, and the assignment of the $3,000 mortgage, as being in violation of the assignment act, could be sustained by these plaintiffs, who had not accepted under assignment of Guy & Sandifer.

2. Because his Honor erred in finding and holding that at the time of the transactions between the Bank of Chester and Guy & Sandifer, the Bank of Chester was notoriously insolvent, and resorting to every possible makeshift to conceal its bankrupt state, virtually living from hand to mouth.

3. Because his Honor erred in holding that the financial condition of the Bank of Chester was an element in showing fraud and collusion between the bank and Guy & Sandifer.

4. Because his Honor erred in holding that the Bank of Chester could not receive the same securities in an embarrassed condition that it could in a properous condition.

5. Because his Honor erred in holding that there was fraud and collusion between the Bank of Chester and Guy

& Sandifer, to give the Bank of Chester a preference over the other creditors of Guy & Sandifer.

6. Because his Honor erred in holding, in effect, that the Bank of. Chester was responsible for the failure of Guy & Sandifer to remit to plaintiffs the amounts collected for them, when the evidence shows that the Bank of Chester had no knowledge of the transactions between plaintiffs and Guy & Sandifer.

7. Because his Honor erred in holding that the assignment of the $3,000 mortgage to the Bank of Chester was fraudulent and void under the Statute of Elizabeth, and also null and void as being in violation of sections 2014 and 2015 of General Statutes.

8. Because his Honor erred in holding that the giving of the $800 mortgage was fraudulent and void under the Statute of Elizabeth, and also null and void as being in violation of sections 2014 and 2015 of the General Statutes.

9. Because his Honor erred in not holding that the $3,000 mortgage was a valid claim in the hands of the assignees of the Bank of Chester, with a lien on the property covered by it from the date of its being filed for record, the said mortgage having been given by Samuel W. Guy when he was unquestionably solvent, and transferred to the bank by the firm when it was solvent for a *bona fide* debt, two years before the assignment of Guy & Sandifer.

10. Because his Honor erred in holding that the giving of a second mortgage deprived the mortgagor of his equity of redemption.

11. Because his Honor erred in holding that the reservation in the assignment of Guy & Sandifer was anything more than a reservation by the individual members of the firm of their homestead exemptions in their individual property.

12. Because his Honor erred in holding that the reservation by a partner of his homestead in his individual property, in an assignment by the firm, vitiated and made void the assignment by the firm.

13. Because his Honor erred in setting aside the assignment of Guy & Sandifer to Gage and Titman.

The defendants, Geo. W. Gage and A. M. Titman, as assignees of Guy & Sandifer, come and except to the decree of his Honor, Judge W. C. Benet, filed herein on the 12th of September, 1895, on the following grounds:

1. Because his Honor erred in holding that the deed of assignment of Guy & Sandifer for the benefit of creditors must be held to be fraudulent and void, and that it must be set aside and vacated because there was fraud and collusion on the part of the assignors, Guy & Sandifer, and the Bank of Chester, in the making of the $800 mortgage and in the recording of the $3,000 mortgage, and in other acts connected therewith.

2. Because his Honor erred in holding and adjudging that the said deed of assignment must be set aside and vacated on the ground that the $800 mortgage was executed and delivered and the $3,000 mortgage recorded within ninety days prior to the said assignment, and in violation of the assignment act.

3. Because his Honor erred in holding that the clause in said deed of assignment providing for the reservation of the homestead to the assignors in their individual property rendered the said assignment void, and for that reason, also, the same should be vacated.

4. Because his Honor declared and adjudged the said deed of assignment null and void, and set aside and vacated the same.

5. Because his Honor failed to hold that the said deed of assignment was good and valid.

6. Because his Honor failed to find and hold that the proof showed that the defendants, Geo. W. Gage and A. M. Titman, as assignees of Guy & Sandifer, had not, in any respect, been derelict in their duty.

*Messrs. Hemphill & Hemphill* and *J. L. Glenn*, for Glenn

and Hemphill, assignees, appellants, and *Mr. A. G. Brice*, for Gage and Titman, assignees, appellants.

*Mr. S. P. Hamilton*, contra.

March 6, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. These two cases, resting upon the same state of facts substantially, and depending upon the same principles of law, were heard and will be considered together. The facts, as gathered from the testimony set out in the "Case," do not seem to be disputed (the only controversy being as to the conclusions to be deduced from such facts), and may be stated substantially as follows: In the year 1892, and for several years previous thereto, Samuel W. Guy and Rufus T. Sandifer were engaged as copartners, under the name of Guy & Sandifer, in a general mercantile business at Lowrysville, in the county of Chester. In February, 1892, the firm, though then solvent, had become indebted to the Bank of Chester in a considerable sum of money, and as collateral security for the said indebtedness, the said Samuel W. Guy, who was then solvent, and who seems to have been the monied man of the concern, on the 9th of February, 1892, executed a mortgage on his own individual real estate to Guy & Sandifer, to secure the payment of the sum of $3,000, which mortgage was a few days after its execution—the testimony shows within ten days—transferred by Guy & Sandifer to the Bank of Chester as additional security for the indebtedness of the firm to the said bank, and Guy, who was examined as a witness on behalf of the plaintiffs, testified that he never saw the mortgage after it was transferred to the bank. This mortgage was not recorded until the 2d of January, 1894. Early in the year 1893, the plaintiffs made contracts with Guy & Sandifer to furnish them with fertilizers, to be sold on a credit to the customers of Guy & Sandifer, with the understanding that the notes taken by them from their customers should be transferred to the plaintiffs as collateral security for the

payment of the notes taken by Guy & Sandifer to the plaintiffs for the purchase of the fertilizers.  In pursuance of this understanding the fertilizers were delivered by the plaintiffs to Guy & Sandifer in the spring of 1893, and on or about the 1st of May of that year, Guy & Sandifer executed their notes to plaintiffs, payable in November and December, 1893.  These fertilizers were sold by Guy & Sandifer to their customers, in various amounts and at different times, and in most instances notes taken for such amounts.  These notes were not delivered to plaintiffs but retained by Guy & Sandifer for collection, but lists of the same were forwarded to the plaintiffs.  When the notes given by Guy & Sandifer were about to become payable, they were sent to the Bank of Chester for collection, in the usual course of business.  Although it appears that Guy & Sandifer collected the whole, or rather nearly all of their customers' notes, they failed to apply the whole of their collections to the payment of their own notes to the plaintiffs, and a considerable balance was left due on said notes.  On the 30th of December, 1893, the said Samuel W. Guy executed a second mortgage on the same property as was covered by the mortgage for $3,000 above mentioned, to the Bank of Chester, to secure the payment of a balance of about $800 due said bank, after deducting the face value of all collaterals held by said bank, and this last mentioned mortgage was also recorded on the 2d day of January, 1894.  On the same day, 2d January, 1894, the said Guy & Sandifer, finding themselves insolvent, executed a general assignment for the benefit of their creditors to the defendants, Geo. W. Gage and A. M. Titman, who accepted the trust and entered upon the discharge of the duties incident to such trust; and having called a meeting of the creditors of Guy & Sandifer, in accordance with the provisions of the statute, at which a large majority of such creditors were represented, the said assignees were also appointed agents of the creditors, without objection on the part of any creditors represented at that meeting.  After the expiration of the sixty

days within which, by the terms of the deed of assignment; creditors were allowed to accept the terms thereof, another meeting of the creditors was called, and held some time during the first week in March, 1894—probably on the second day of that month. At that meeting, the assignees laid before the creditors a full statement of the assets and liabilities of the assigned estate, including an itemized statement of the collaterals held by the Bank of Chester, which had been, previously to the assignment, turned over to the bank by Guy & Sandifer, to secure the payment of the indebtedness of that firm to said bank, amounting to about $8,000. Upon consideration of that statement, it was agreed by all parties present at that meeting that it would be best for the interests of all parties that the Bank of Chester should be allowed to hold its collaterals, looking to them alone for the payment of its debt, and waiving its right, acquired by having accepted the assignment, to participate in the assets held by the assignees. The terms of this agreement were reduced to writing and signed by the parties present, and the assignees, by a circular letter, informed the creditors of this action. The result was, that the assignees were enabled to pay, and did pay, the accepting creditors, not including the Bank of Chester, a dividend of twenty-two cents on the dollar, and estimated that they would be able to pay a further dividend of ten cents on the dollar out of the then unencumbered assets in their hands, and that the Bank of Chester would probably be able to realize out of their collaterals about the same per centage of its debt. The plaintiffs, however, having declined to accept the terms of the assignment, did not participate in this arrangement, and on the contrary brought their actions against Guy & Sandifer on their notes and recovered judgments for the balances due thereon, which were entered in April, 1894. In the meantime, to wit: on the 12th of March, 1894, the Bank of Chester made an assignment, for the benefit of its creditors, to the defendants, John J. Hemphill and J. L. Glenn, who accepted the

trust and are proceeding in the execution thereof. The plaintiffs, having obtained a return of *nulla bona* on their executions issued to enforce their judgments against Guy & Sandifer, brought these actions, not for the purpose, as incorrectly stated in the opening sentence of the Circuit decree, "of setting aside and vacating a deed of assignment executed by Guy & Sandifer to G. W. Gage and A. M. Titman, on the 2d of January, 1894," but for the purpose, as shown by the complaint as set out in the "Case," of having the transfer of the $3,000 mortgage to the Bank of Chester "declared a fraudulent preference under the statute, and that the assignees of the said bank be ordered to surrender the same to the assignees of Guy & Sandifer." 2d. That the mortgage of S. W. Guy to the Bank of Chester—the $800 mortgage—be declared to be a fraudulent preference under the statute, and given up to be cancelled. 3d. That the mortgage of S. W. Guy to Guy & Sandifer—the $3,000 mortgage—be foreclosed, the mortgaged premises sold, and the proceeds of such sale be applied, first, to the payment of the costs and expenses of this action; second, to the payment of the judgment in favor of plaintiffs; third, to the payment of the other creditors of Guy & Sandifer according to their legal priorities; and fourth, "That the assignees of the Bank of Chester be ordered to deliver to the plaintiffs the notes pledged to them by Guy & Sandifer, the property of plaintiffs, or pay to plaintiffs the amounts belonging to them."

The two cases came on to be heard before his Honor, Judge Benet, together, upon the testimony taken in open court by the stenographer, which is fully set out in the "Case;" and several months thereafter his Honor rendered his decree, which is set out in the "Case," and should be incorporated in the report of this case. From this decree the defendants appeal, upon the several grounds set out in the record, which should likewise be incorporated in the report of the case.

It appears from the record that after all the testimony

47—45

was taken, counsel for plaintiffs moved for and obtained an
order for leave to insert in the complaint the following
paragraph: "That in said assignment, the said Guy & San-
difer reserved to themselves, as persons—'but the homestead
of either party hereto in any individual assets he may pos-
sess, is not intended to be hereby conveyed away'—which
the plaintiffs allege rendered the assignment void, and that
the following prayer for judgment be added: That the said
assignment, for many causes stated in the complaint, and
the amendment herein allowed, is void, and should be set
aside."   It will thus be seen that, after all the testimony
had been taken, the case (treating the two actions as one,
for the sake of convenience), was made to assume an entirely
different, and, in fact, contradictory shape, from that which
it originally bore; for, in the first instance, the action mani-
festly assumed the validity of the assignment of Guy & San-
difer to Gage and Titman, as its object was to have the
transfer of the $3,000 mortgage to the Bank of Chester an-
nulled, and the same delivered up to the assignees, as part
of the assigned estate, and to have the $800 mortgage can-
celled, as being in fraud of the assignment law.   But when
the amendment was made, the whole scope and object of
the action was entirely changed, and it became an action
to set aside the assignment, and to have the mortgages above
referred to declared void under the Statute of Elizabeth, as
being given with intent to hinder and delay the creditors
of Guy & Sandifer in the collection of their claims.   This,
together with the great delay on the part of the stenogra-
pher, owing to the accident referred to in the Circuit decree,
in furnishing a copy of the testimony will, no doubt, ac-
count for many of the errors into which the Circuit Judge
seems to have fallen; for it appears that the case was heard
at March term, 1895, and the decree bears date 9th Sep-
tember, 1895.

Coming, then, to the merits of the case, the Circuit Judge
finds "that the transactions by and between Guy & Sandifer
and the Bank of Chester in the matter of the two mortgages,

especially the $800 mortgage, were collusive and fraudulent; that they were intended to secure an unlawful preference to the Bank of Chester at the expense of the other creditors of Guy & Sandifer; and that the reservation of the homestead in the deed of assignment vitiated that deed."

The reasons given by his Honor for these conclusions are thus stated by him: "When it is remembered that the $800 mortgage was made and delivered on the 30th of December, 1893, when not only Guy & Sandifer were hopelessly insolvent, and just two days before they made their assignment, but that the Bank of Chester, the mortgagee, was notoriously embarrassed, and resorting to every possible shift to conceal its bankrupt state, virtually living from hand to mouth, and even failing to remit collections made, its own assignment being then imminent, and actually made ten weeks after," it is difficult to escape the conclusion above announced. Now, when it is remembered that the assignment of Guy & Sandifer, a copy of which is set out in the "Case," did not purport to cover anything but partnership assets, and that the property covered by the $800 mortgage was not, and never had been, any part of the partnership assets; and when it further appears, from the closest scrutiny of the testimony set out in the "Case," that there is not a particle of evidence that the Bank of Chester was at the time of this transaction in the embarrassed condition so graphically depicted by the Circuit Judge, we find it very difficult to understand how the testimony could have been so utterly misconceived. The only testimony which we have been able to find which even tends to show that the Bank of Chester was, at any time prior to the 12th March, 1894, when it made its assignment, in any financial strait whatever, is the fact testified to by Mr. Glenn, when examined as a witness on behalf of the plaintiffs, that the books of the bank showed that the first collection which the bank failed to remit (which was a claim of a third party in no way connected with the transactions involved in this case) was made on the 25th

of January, 1894, nearly a month after the execution of the $800 mortgage. Surely this isolated fact, occurring nearly a month afterwards, is wholly insufficient to show that the bank was, on the 30th of December previous, in such desperate financial straits as the Circuit Judge seems to have assumed. Indeed, Mr. Glenn, who was assignee, had possession of the books of the bank, and was examined carefully upon this point, but counsel for plaintiffs was unable to point out any instance in which the bank had been in default prior to the 25th January, 1894, which, as we have said, was some time after the transaction which it is assumed, without any evidence whatever, was prompted by the financial straits of the bank. The Circuit Judge, however, seems to think his views strengthened by the fact that the $3,000 mortgage was not recorded until the 2d of January, 1894, the day on which Guy & Sandifer made their assignment. Now, when it is remembered that the undisputed evidence is, that this mortgage was executed on the 9th of February, 1892, and within ten days thereafter transferred to the Bank of Chester, to secure a large indebtedness of Guy & Sandifer to the bank, the *bona fide* character of which is not disputed, and that this transaction occurred nearly two years before the execution of the assignment, and fully one year or more before Guy & Sandifer became indebted to these plaintiffs, it is impossible to conceive how the failure of the bank to have this mortgage recorded within the time prescribed by the statute could affect this case. *South Carolina Loan Co.* v. *McPherson*, 26 S. C., 431; *Magovern* v. *Richard*, 27 S. C., at page 287. Indeed, according to the testimony, this mortgage, though nominally given by Samuel W. Guy to Guy & Sandifer, was really intended to increase the credit of that firm with the Bank of Chester, and was accordingly transferred to the bank within ten days after its execution. The only testimony upon this point comes from Samuel W. Guy, who was offered as a witness by the plaintiffs themselves. He testifies that at the time this mortgage was given, all the

parties were solvent, and that it was given for the purpose above indicated. Although pressed to say that there was some agreement or understanding that the mortgage was to be kept off the records, he declined to say anything of the kind, and, on the contrary, said that if there was any such agreement or understanding, he knew nothing about it, and that he had never seen the mortgage after it was transferred; nor is there the slightest evidence from any other source of any such agreement or understanding. This transaction could not possibly have been intended to defraud these plaintiffs, for their debts were not contracted until more than a year afterwards. Nor could it have been intended to defraud any other creditor of either Samuel W. Guy or Guy & Sandifer, for at that time the Bank of Chester was practically their only creditor.

It is impossible to conceive of any ground upon which the $3,000 mortgage can be assailed as invalid, either under the Statute of Elizabeth or the assignment act, for at the time it was given the plaintiffs were not creditors of Guy & Sandifer, as their debt was not contracted until about a year afterwards; it was given to secure the payment of an undisputed *bona fide* debt, at a time when there was no evidence whatever that any of the parties were insolvent, and the fact that the mortgage was not put on record until about the time the assignment was executed, clearly does not, of itself, render the mortgage void under the assignment act, as was held in *So. Ca. Loan Co.* v. *McPherson, supra.*

As to the $800 mortgage, it is very easy to understand how that mortgage, *if it had been made by Guy & Sandifer*, would have been void under section 2015 of the Gen. Stat. of 1882, now incorporated in the Rev. Stat. of 1893 as section 2147, inasmuch as it bears date within ninety days before the making of the assignment; but it was not, in fact, made by Guy & Sandifer, but by Samuel W. Guy, who, in the eye of the law, is a different person from Guy & Sandifer. And, what is more to the point, that mortgage does not purport to cover, and does

not cover, any of the property of Guy & Sandifer. The object of that section was to prevent an insolvent person from selling or mortgaging any portion of *his* property to another who has reasonable cause to believe the vendor or mortgagor to be insolvent, within ninety days prior to the making of an assignment of his property for the benefit of his creditors. But here the property mortgaged was not the property of the assignors, Guy & Sandifer, but was the property of another, Samuel W. Guy, a distinct and different person, in the eye of the law, from the assignors, Guy & Sandifer. This distinction is so well recognized in the law that it is settled in this State, in the case of *Trumbo* v. *Hamel*, 29 S. C., 520, that an assignment by a partnership of partnership assets, for the payment of partnership debts, is not void as a partial assignment because it does not include the individual property of the several copartners; for, as is said in that case, "a copartnership is a distinct entity, entirely separate from that of any of its members, and we know of no reason why it may not assign its property for the payment of its debts without including individual property of the different partners." This doctrine was approved and followed in a recent case of *Armstrong* v. *Hurst*, 39 S. C., 498. It is clear, therefore, that this mortgage was not void under the assignment law, and upon the same principle it would not be void under the Statute of Elizabeth; for as the property covered by these mortgages never was the property of Guy & Sandifer, it is difficult to see how the disposition made of it by the real owner, especially when made to secure the payment of a valid *bona fide* debt, could be said to hinder, delay or defraud the creditors of Guy & Sandifer. It is true, that the mortgage for $3,000 having been made, nominally, as it appears, in favor of Guy & Sandifer, did for a time—a very short time, not more than ten days—constitute a portion of the partnership assets of Guy & Sandifer, but as that mortgage was transferred to the Bank of Chester about two years before the deed of assignment was executed, and about one year before the

debts to plaintiffs were contracted, it is impossible to see how that circumstance can affect the present inquiry.

The Circuit Judge also holds that the deed of assignment from Guy & Sandifer to Gage and Titman must be set aside upon three grounds.   1st. Upon the ground of fraudulent collusion between the Bank of Chester and Guy & Sandifer "in the making of the $800 mortgage, and in the recording of the $3,000 mortgage, and in other acts connected therewith."   2d. Upon the ground "that the $800 mortgage was executed and delivered, and the $3,000 mortgage recorded within ninety days prior to the said assignment."   3d. Upon the ground of the reservation of the homestead contained in the deed of assignment.

As to the first ground, even if the testimony was sufficient (as it was not, as we have seen,) to show any such fraudulent collusion between the Bank of Chester and Guy & Sandifer in the making of the $800 mortgage, and in the recording of the $3,000 mortgage, as is there charged, it is very difficult to see how that could render the deed of assignment invalid.   If the testimony was sufficient to show such fraudulent collusion, it is not difficult to see how it could warrant a decree setting aside the one mortgage and the transfer of the other, but it is impossible to conceive how that could affect the validity of the assignment.   So, too, as to the second ground, it is very obvious that if it had been made to appear that the $800 mortgage had been executed *by the assignors*, Guy & Sandifer, within ninety days prior to the assignment, *the assignees* could, under section 2147 of the Revised Statutes, have had *such mortgage* set aside, upon a proper showing for that purpose, but certainly that would not affect *the assignment.*   Indeed, the terms of that section of the Revised Statutes necessarily imply that, in the contingency there provided for, the assignment remains good; for it is made the duty of the assignee, in such contingency, to take the proper proceedings to recover the property mortgaged or transferred; and if the deed of assignment should be de-

clared invalid, there would, of course, be no legal assignee, and no person left to perform the duty expressly required by the statute.

As to the third ground, we are unable to see how the reservation of the right of homestead in the individual property of the persons composing the firm of Guy & Sandifer could possibly invalidate the deed of assignment. That deed did not convey to the assignee, and did not purport to convey, any of the individual property of either of the partners. It simply conveyed the partnership property to the assignees, for the payment of the partnership debts. At most, therefore, the reservation was a work of supererogation, for if there had been no such reservation in the deed, the right of homestead, which either or both of the partners may have had in their individual property, would not have passed by the deed of assignment, not simply because it may have been exempt under the homestead law, but because such property was not embraced in the deed. Whether these partners can claim a homestead in their individual property conveyed by the mortgage above referred to, *as against such mortgages*, is not a question involved in the present case. The only question here is, whether the unnecessary reservation of the right of homestead in their individual property invalidates the deed of assignment, and we think it clear that it does not. See *Adler* v. *Cloud*, 42 S. C., 272.

If, then, there was no ground for setting aside the deed of assignment, there certainly was not the slightest evidence that the assignees were, in any way, derelict in the performance of their duty, and, therefore, no ground for the appointment of a receiver. The only intimation of any dereliction of duty on the part of the assignees, even in the argument of counsel for respondents, was in assenting to the arrangement made with the Bank of Chester, whereby the bank was permited to retain the collaterals which it held, and forego its right, which it had acquired by accepting the terms of the assignment, to par-

ticipate in any dividends which might be made by the assignees out of the proceeds of the assigned estate. But that arrangement was made with the bank, not by the assignees but by the creditors, at a meeting of which ninety per cent. of the debts were represented, and the assignees simply carried out the arrangement made by the creditors. Besides, it is very manifest that such arrangement was to the interest of the creditors. Something is said in the Circuit decree about Guy & Sandifer and the Bank of Chester not being true to their trust, "the one in failing to collect, the other in failing to remit after collection." Exactly what is meant by this it is somewhat difficult to determine. If it were designed to convey the idea that the notes, taken by Guy & Sandifer from their customers for fertilizers sold to them, which, by the terms of the agreement between Guy & Sandifer and the plaintiffs, belonged to the plaintiffs, were sent to the Bank of Chester for collection, and either not collected or not remitted when collected, then there is not a particle of evidence to sustain such an idea. On the contrary, S. W. Guy, who was offered as a witness by the plaintiffs themselves, distinctly testifies that none of these notes were sent to the bank for collection, but were sent to Guy & Sandifer for that purpose. But if the meaning was, that the notes of Guy & Sandifer to the plaintiffs were sent to the Bank of Chester for collection in the usual course of business, then, while there is very slender evidence even of that fact, there certainly is not the slightest evidence of any fault or negligence on the part of the bank, either in not collecting or in failing to remit.

It seems to us that the fundamental error which pervades the Circuit decree is in failing to distinguish between two distinct and different legal entities—Samuel W. Guy and Guy & Sandifer—and to keep in mind the dates of the several transactions involved, and also in attributing to section 2147 of the Revised Statutes a force and effect which its terms not only do not warrant, but, on the contrary, necessarily negative.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the complaints in both of the cases above stated be dismissed.